467 So.2d 1098 (1985)
In re the ESTATE OF Randolph A. SKURO.
No. 84-2041.
District Court of Appeal of Florida, Fourth District.
May 1, 1985.
Richard G. Coker, Jr., Fort Lauderdale, for appellant.
Michael L. Trop of Capp, Reinstein, Kopelowitz & Atlas, P.A., Fort Lauderdale, for appellee.
BARKETT, Judge.
The personal representative of this estate appeals the trial court's determination that a contract for the sale of homestead property executed by the decedent prior to his death does not destroy the homestead status of that property. We affirm the probate court's order setting the property aside as homestead.
The facts are not disputed. The decedent, Randolph Skuro, executed a contract for the sale of his home. Prior to any conveyance, Skuro died. He was survived by his children, several of whom were minors. The parties agree that before the contract for sale was executed, the property in question was homestead. The appellant contends, however, that the homestead status of the property was destroyed by the execution of the contract for sale as a result of the doctrine of equitable conversion. We disagree.
The homestead exemption of property in Florida is created by the Florida Constitution, article X, section 4. This section was amended in the November 1984 general election, although at all times relevant to this litigation it provided as follows:
4. Homestead  exemptions
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by the head of a family:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not *1099 be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;
(2) personal property to the value of one thousand dollars.
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.
(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.
Attachment of homestead status thus affects a property owner's rights concerning encumbrances, alienation, and devise. This homestead provision is to be construed liberally for the benefit of those whom it was designed to protect. M.O. Logue Sod Service, Inc. v. Logue, 422 So.2d 71, 72 (Fla. 2d DCA 1982), rev. denied, 430 So.2d 451 (Fla. 1983); LaGasse v. Aetna Insurance Co., 213 So.2d 454, 459 (Fla. 2d DCA 1968). Once homestead status has been acquired, it continues until the homestead is abandoned or alienated in the manner provided by law. M.O. Logue Sod Service, Inc. v. Logue, 422 So.2d at 72; Marsh v. Hartley, 109 So.2d 34, 38 (Fla. 2d DCA 1959).
This case does not contain issues of abandonment or continuous uninterrupted physical presence; Skuro and his children lived on the subject property continuously until Skuro's death. The issue, then, is whether the contract for sale of the property constituted an alienation "in the manner provided by law" such that Skuro destroyed the homestead status for purposes of devise and descent. M.O. Logue Sod Service, Inc. v. Logue, 422 So.2d at 72. We can find no case in Florida that answers this question in this context.
Appellant urges us to apply the doctrine of equitable conversion, which would convert Skuro's real property into personalty by the execution of the contract to sell. Appellant relies primarily on In Re Estate of Sweet, 254 So.2d 562 (Fla. 2d DCA 1971), cert. denied, 259 So.2d 717 (Fla. 1972), in which the court stated:
[T]he equitable conversion doctrine is well established in Florida; when an owner makes a specifically enforceable contract to sell his real property, the vendee becomes the beneficial owner and the vendor retains only naked legal title in trust for the vendee and as security for the vendee's performance... . Under this doctrine the vendor's interest is considered personalty and passes accordingly upon the vendor's death, at least in the absence of a showing of contrary intent.
Id. at 563 (citations omitted). See also Buck v. McNab, 139 So.2d 734 (Fla. 2d DCA), cert. denied sub nom. McNab v. Buck, 146 So.2d 374 (Fla. 1962). The equitable conversion cases cited by appellant, however, do not involve the homestead status of the property, and do not apply the doctrine of equitable conversion in order to defeat homestead status; they merely apply the doctrine as between the vendor and the vendee. Accordingly, we find no authority for appellant's position, although we find compelling authority to the contrary.
In Beensen v. Burgess, 218 So.2d 517 (Fla. 4th DCA 1969), this court considered the specific issue of whether homestead property loses its constitutional protection against forced sale because a contract to sell the property has been executed. Beensen v. Burgess, involved a purchaser and a judgment creditor of the vendor. The vendor, Dunn, contracted to sell his homestead property to the purchaser, Burgess. The defendants, including Beensen, were creditors of Dunn who had judgments against him that had been recorded several years *1100 prior to the sale of the property by Dunn to Burgess. Pursuant to the terms of the sale agreement, Dunn moved out five weeks prior to closing, and surrendered possession to Burgess at that time. Burgess sued the defendant creditors to quiet title to the property. The court affirmed the trial court's finding that Dunn had not abandoned the property as his homestead for the five-week period when he surrendered possession of the property to Burgess, and affirmed the trial court's finding that the property remained Dunn's home retaining its homestead status "until the sale to [Burgess] was closed." Id. at 519 (emphasis added).
The facts in Brown v. Lewis, 520 F. Supp. 1114 (M.D.Fla. 1981) (applying Florida law), are somewhat similar to those in Beensen v. Burgess. The court was again confronted with the issue of whether the vendor of homestead property terminated her homestead status when she vacated the property shortly after the execution of the contract for the sale of property but prior to the conveyance of title. A judgment lien had been entered and recorded by certain creditors against the Browns in 1974. In 1978, Mr. Brown died. On March 7, 1979, Mrs. Brown executed a contract for the sale of her land to Lewis. Shortly thereafter, Mrs. Brown moved to Michigan, and established a permanent residence there. The sale of the property closed on May 15, 1979. The judgment creditors admitted that the property was homestead prior to March 7, 1979, but argued that the property lost its status as homestead when Mrs. Brown vacated the property and established permanent residence in Michigan. Therefore, the creditors argued, their liens attached prior to the closing of the sale and conveyance of the deed. The court, citing Beensen v. Burgess, held: (1) that homestead status was not lost despite the contract for sale; (2) that the property was protected by the homestead exemption when title was conveyed on May 15, 1979; and (3) that therefore the judgment lien never attached to the property.
Both Beensen v. Burgess and Brown v. Lewis discuss the homestead exemption after a contract for sale has been executed in the context of immunity from judgment liens, while in the instant case the question arises in the context of devise and descent. We cannot see a distinction. A homestead is a homestead vel non for all purposes, and the construction in these cases applying to creditors should be applied to situations involving devise and descent as well. In Engel v. Engel, 97 So.2d 140 (Fla. 2d DCA 1957), a case involving the descent of property alleged to be homestead, the court said:
We apply the same criteria as would have been applied if a creditor had sought a forced sale of the premises involved and the testator had asserted his homestead exemption.
Id. at 142. Similarly, in Holden v. Estate of Gardner, 420 So.2d 1082, 1085 (Fla. 1982), the Florida Supreme Court held that the use of the term "homestead" in Section 732.4015, Florida Statutes (1979) (which concerns the devise of homestead) refers to homestead as that term is used in the Florida Constitution. Accordingly, we determine that this case is controlled by this court's opinion in Beensen v. Burgess, 218 So.2d 517 (Fla. 4th DCA 1969), and that the common law doctrine of equitable conversion should not apply to alter the constitutionally provided homestead status of property.[1] In light of the importance of the *1101 issue, we certify the following question as one of great public importance:
Does the doctrine of equitable conversion apply to contracts for the sale of homestead real property?
AFFIRMED.
GLICKSTEIN, J., concurs specially with opinion.
LETTS, J., dissents with opinion.
GLICKSTEIN, Judge, concurring specially.
I hope that my brief remarks do not diminish or detract from Judge Barkett's opinion, in which I join.
First, this is a battle between the adult children of the late father's first marriage and the minor children of his second marriage. To award benefits to the latter at the expense of the former would only expand on the practice of fathers in Florida to disregard their first families in favor of the current objects of their affection. The majority opinion prevents this.
Second, in my view, homestead applies to property rights, regardless whether the form is real or personal. The proceeds of the sale of a homestead have received protection in Orange Brevard Plumbing & Heating Company v. LaCroix, 137 So.2d 201 (Fla. 1962). See also Sun First National Bank of Orlando v. Gieger, 402 So.2d 428, 432 (Fla. 5th DCA 1981). How could the homestead be temporarily unprotected in this case where the family still possessed it but protected when transformed to proceeds after the sale had closed?
Third, the fact that homestead status is conferred by the Constitution and statute is most significant, in my view. The former is the ultimate living expression of an organized society. The latter is the voice of that society's surrogates. Equitable conversion is not the collective voice of Floridans exercising their rights by way of the ballot and its purpose is entirely different and viewed from a different plane.
LETTS, Judge, dissenting.
The Florida case law cited by the majority has repeatedly ignored the doctrine of equitable conversion in the pursuit of protecting Florida's unique constitutional homesteads, or the proceeds therefrom, from creditors. That protection is not required here. Before us now is a question of sibling rivalry, not cold-blooded creditors seeking to throw the family out in the street. In the case at bar, if the homestead status is upheld, the property does not pass under the will and instead all the children share in it under Section 732.401, Florida Statutes (1983). On the other hand, if the homestead status is struck down, the minor children named in the will as devisees inherit the property to the exclusion of their adult brothers and sisters who are not named as devisees of it and who do not live there.
When a seller enters into a contract to alienate his land, he retains only naked legal title and the buyer becomes the beneficial owner. This transformation of interest, universally applied and recognized in real estate law, has been legally tagged "equitable conversion" and the seller's remaining interest, until the closing, is considered to be mere personalty. In Re Estate of Sweet, 254 So.2d 562 (Fla. 2d DCA 1971). As such, it would be includable in the probate estate and have no homestead status as real estate.
I am not cited to any case which even argues that the doctrine of equitable conversion *1102 does not apply to land just because that land also constitutes a homestead. Instead, the cases relied on simply ignore the doctrine in order to reach the desired result. Admittedly, the purpose of a constitutional homestead is to keep the real estate in the family and provide safe harbor from outside creditors and financial misfortune. Crosby & Miller, Our Legal Chameleon, the Florida Homestead Exemption, 2 Fla.L.Rev. 12 (1949). Accordingly, the cases cited by the majority have arrived at a result consistent with that purpose. In my view, it would have been more efficacious to have done so by excepting homesteads, or the proceeds therefrom, from the doctrine so as to preserve the former homestead from creditors rather than ignoring the doctrine altogether. However, any way we slice it, there are no creditors involved here and the doctrine should apply.
In the case before us now, we have competition between brother and sister and this particular parcel of real estate is not destined to remain in the family because the head of the family has entered into a contract to sell it. Nor is it suggested that it will be replaced by another. Thus, the safe harbor will cease to exist leaving us only to consider whether all in the lineal family, or only some of them, will enjoy the fruits of the sale.
Finally, if I myself dare to be result oriented, my version of the outcome would permit the upholding of a clause in a will and a carrying out of the testator's intent, a polestar so often followed approvingly that it needs no citation.
I admit the majority opinion, in large part based on Beensen v. Burgess, supra, out of this very court, has merit and I do not seek to recede from it. I seek, instead, to distinguish it. However, I believe that the Beensen v. Burgess rationale which the majority now adopts, as distinct from the result, is in conflict with In Re Estate of Sweet, supra, and with Arko Enterprises, Inc. v. Wood, 185 So.2d 734 (Fla. 1st DCA 1966).
NOTES
[1] The dissent suggests that the doctrine of equitable conversion should be applied to defeat the homestead status of the property in order to exclude the adult siblings and allow the minor children to inherit the property pursuant to the will. The error in this approach is that the means suggested would not necessarily achieve the desired result in this case, and, more importantly, would achieve the undesired result in future cases. If equitable conversion were to be applied, there would be no real property for the minor children to inherit. As the dissent points out "the seller's [decedent's] remaining interest until the closing, is considered to be mere personalty... . As such, it would be includable in the probate estate and have no homestead status as real estate." Since it would be a part of the probate estate, it would be subject to the creditors of the estate. The record in this case leaves us in the dark as to whether any estate creditors exist. In any case, where creditors do exist, the application of the doctrine would not ensure that the homestead property or proceeds therefrom would be shared only by the siblings. Indeed, in addition to subjecting the proceeds to creditors' claims, which might diminish or eliminate such proceeds, they would be subject to the decedent's will, which might leave the property or proceeds to anyone other than the decedent's spouse or children. To hold, as the majority does, that equitable conversion does not apply to homestead property at least ensures that the property or proceeds are preserved even though in some cases they must be shared by all the lineal descendants of the deceased instead of only the minor descendants. It is our view that this was the intent of the constitutional and statutory homestead provisions.