596 So.2d 130 (1992)
Catherine KELLY, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. BQ-21.
District Court of Appeal of Florida, First District.
March 16, 1992.
Francis A. Solorzano and Suzanne Harris, Florida Rural Legal Services, Inc., Bartow, for appellant.
Regina L. Morante, Charleen Ramus and Jack Farley, Dist. VI Legal Counsel, Tampa, for appellee.
PER CURIAM.
This is an appeal of an administrative decision denying benefits under the Aid to Families with Dependent Children (AFDC) program for the appellant's alleged noncooperation with child support enforcement efforts. We reverse.
Appellant and her child received benefits under the AFDC program. Sometime in 1985 the Department of Health and Rehabilitative Services (HRS) requested appellant's cooperation in securing a child support *131 order against the father of appellant's son. Cooperation in child support enforcement efforts is a condition of eligibility for AFDC. 42 U.S.C. § 602 (a)(26)(B). It is undisputed that appellant identified an individual as the father, supplied information to help locate that individual, voluntarily appeared as a witness against him in a paternity suit filed by HRS and, finally, voluntarily submitted to human leucocyte antigen (HLA) blood testing.[1] A judgment of paternity was entered against the individual whom appellant had named as the father. However, that judgment was later set aside.
Shortly thereafter a public assistance specialist supervisor from HRS met with appellant and informed her that HLA testing had conclusively excluded the man she had named as the possible father. The HRS supervisor explained that in order to continue to be included in the AFDC grant, appellant would have to name another man as the father. Appellant replied that the individual she had previously named was the father and that she was unable to name another man because she had not had sexual relations with anyone else during the possible period of conception. Thereafter HRS applied for sanctions by removing appellant's need from the AFDC grant. Appellant requested a hearing which was granted.
At the hearing HRS had only one witness. That witness was the supervisor who had met with appellant. The supervisor testified that her only direct contact with appellant was the conversation which took place regarding HRS's demand that appellant provide the name of another putative father. HRS, over appellant's objection, also introduced two pieces of documentary evidence which are relevant to this appeal.[2] The first document is what purports to be the results of the HLA test.[3] The HRS witness admitted that she had no personal knowledge of how paternity tests are accomplished, no knowledge of the particular procedures used in appellant's case, and was not competent to interpret HLA tests. The second document was a copy of what purports to be a final judgment setting aside the final judgment of paternity.[4] Subsequent to the hearing but prior to the ruling by the hearing officer, the parties submitted a stipulation which provided in pertinent part that "before imposing sanctions, the assistance payment unit [a division of HRS] made no independent evaluation of the authenticity or reliability of HLA reports referred to it by the child support enforcement unit [another division of HRS]." As noted, the HRS witness who testified at the hearing was from the assistance payment unit.
The hearing officer made a determination that the appellant had not cooperated with HRS in that she had failed to supply any other names of individuals who might be the father of her child and that an HLA test had conclusively excluded the man named as the possible father. A final order was entered removing appellant's needs from the AFDC grant. This appeal ensued.[5]
*132 Appellant asserts a number of arguments on appeal, but we need address only one. Appellant argues that HRS has applied Rule 10C-25.006(2)(a)[6] contrary to this court's construction of the rule. HRS's brief does not address this issue, or for that matter any of the other issues raised in appellant's brief.[7] As a condition of receiving federal financial participation a state must operate its AFDC program in accordance with federal law. 42 U.S.C. § 602(a)(26)(B). Rule 10C-25.006(2)(a) raises a presumption that a mother is noncooperative if the HLA test excludes the man named by the mother and the mother does not supply another name. In B.K. v. Department of Health and Rehabilitative Services, 537 So.2d 633, 635 (Fla. 1st DCA 1989), we held that the presumption of noncooperation arising from the rule may be rebutted. Federal law provides that a recipient's statement under oath affirming her lack of additional information about another possible father establishes cooperation. Id. We held in B.K. that the department cannot continue its denial of AFDC benefits where the applicant or recipient attests under penalty of perjury to the lack of information regarding the identity of any other person as a putative father of the child. Id. In this case, appellant testified under oath at the hearing that she could provide HRS with no additional information about who the father of her child might be. In our opinion that testimony, as in B.K., complies with federal law. As such, it was error for HRS to deny appellant AFDC benefits.[8]
Accordingly, the order being appealed is hereby reversed and this matter is remanded for further proceedings not inconsistent with this opinion.
WIGGINTON, ALLEN and WOLF, JJ., concur.
NOTES
[1] Rule 10C-25.006 of the Florida Administrative Code which now requires that the mother submit to HLA testing was not in effect at the time.
[2] Appellant's objection to the documents was that they were hearsay and the hearing officer could not base any finding of noncooperation by the mother solely on hearsay evidence.
[3] The document is notarized and has the name of a laboratory in Nashville, Tennessee. The document contains the conclusory statement that "[defendant] is excluded as the father ... by the HLA system." The statement is not explained or reasons offered for the conclusion.
[4] The copy of the "judgment," in the record, is not certified and thus we cannot determine its authenticity. Cf. § 90.902(4), Fla. Stat. (extrinsic evidence of authenticity is not required for a copy of an official public record certified as correct by the custodian). The judgment simply recites that "the parties and minor child submitted to HLA blood testing which showed that defendant was not the father... ."
[5] Resolution of this case was delayed pending the outcome of Smith v. Department of Health and Rehabilitative Services, 573 So.2d 320 (Fla. 1991), to which case appellant was a party. That case held that an indigent appellant is entitled to a transcript of the hearing below at no cost. Id. at 324. We ordered the record supplemented with the transcript and that supplemental briefs be filed by the parties. Before the briefs were filed, HRS filed a motion to dismiss arguing that the case was moot because appellant "is now receiving benefits on behalf of herself" and her child. Appellant's response to the motion to dismiss indicated she was receiving benefits only because a stay had been entered by this court and thus the case was not moot. In an unpublished order we denied the motion to dismiss.
[6] The rule provides in pertinent part:

(2) Non-Cooperation. Non-cooperation or failure to cooperate shall be defined to include but not be limited to the following conduct:
(a) Failure or refusal to identify the father of the child, or, where more than one man could be the father of the child, to identify all such persons. If the mother identifies one or more persons as possible fathers of the child and asserts that there are no others who could be the father of the child, but HLA or other scientific test indicates that none of the persons identified could in fact have been the father of the child, then the mother shall be deemed non-cooperative. If she subsequently identifies another person as a possible father of the child, she shall still be deemed noncooperative until such person has been given an HLA or other scientific test and is not excluded as the father by such test.
The above rule is virtually identical to the language found in section 409.2572(2)(a), Florida Statutes.
[7] The appellee apparently has construed the word "brief" literally. The brief is there sentences long, not counting the certificate of service. It states in its entirety:

This case is moot. The Department does not presently have sanctions against Appellant and will not impose any based on the facts of this case. Therefore, this case must be dismissed.
We disagree. The case is not moot and we have previously denied a motion to dismiss which raised that issue. Dismissing the case would have the effect of upholding the order and vacating the stay entered by this court. We accept HRS's statement that it no longer wishes to proceed further against appellant. However, while an appellee is not required to file a brief, State Board of Optometry v. Florida Society of Ophthalmology, 538 So.2d 878, 889 (Fla. 1st DCA 1988), the better practice would have been to file a brief or a confession of error. Lakes of Emerald Hills v. Silverman, 558 So.2d 442 (Fla. 4th DCA 1990).
[8] We note that the hearing officer did not have the benefit of our decision in B.K. when he made his ruling.