SHEPHERD, J.,
specially concurring.
The only salient fact necessary to the resolution of this case is the undisputed fact that from January 2, 1990, the date the Final Judgment of Dissolution of the Beltrans’ marriage was entered, to April 6, 2007, the day Evaristo quitclaimed his interest in the former marital residence to Grisel, Grisel resided on the property. This is so based upon the plain language of article X, section 4(a)(1) of the Florida Constitution, which states:
§ 4. Homestead; exemptions
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and *788 improvements thereon, which shall not be reduced without the owner’s consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner’s family.
Grisel, Evaristo’s daughter, is a member of his family. See Cain v. Cain, 549 So.2d 1161, 1163 (Fla. 4th DCA 1989). So long as Evaristo owned any interest in the former marital home and Grisel resided in it, the interest he owned was exempt from execution and levy (forced sale) to satisfy the judgment obtained by Tops All Roofing. See Wilson v. Fla. Nat’l Bank & Trust Co. at Miami, 64 So.2d 309, 313 (Fla.1953) (“It is well established in this jurisdiction that once property acquires the status of a homestead such characteristic continues to attach to it unless the homestead be abandoned or alienated in the manner provided by law.” (citing Clark v. Cox, 80 Fla. 63, 85 So. 173, 174 (1920))). Grisel and Evaristo each have an independent right to assert the benefit of the forced sale provision in this case, and Gri-sel’s right cannot be compromised by any action by her father. See Cain, 549 So.2d at 1163 (“To show abandonment, both the owner and his family must have abandoned the property.”) (emphasis added); Nationwide Fin. Corp. of Colo. v. Thompson, 400 So.2d 559, 561 (Fla. 1st DCA 1981).[3] Thus, the moment Evaristo quit-claimed his interest in the property to his daughter, the judgment debtor, Tops All Roofing, no longer held a leviable interest in the subject property. The will of the people, as expressed by them in their constitution for more than 140 years, was fulfilled — the property was preserved for the benefit of the family.
On the strength of this reasoning, I join in the panel decision.

. Nor is Grisel's age (she passed from childhood into adulthood during the period), or financial support from her father pertinent to the issue before us. See Pierrepont v. Humphreys (In re Estate of Newman), 413 So.2d 140, 142 (Fla. 5th DCA 1982) ("The homestead character of a piece of property is not created by, nor is it dependent upon, any general or specific mental intent on the part of the owner to create or maintain a certain piece of property as his homestead, but arises and attaches from the mere existence of certain facts in combination of place and time.”).